STATE v. OLIN M. DAVIS.

(Filed 1 February, 1939.)

**1. Criminal Law § 47—**

Consolidation for trial of warrants against several defendants charging each of them, as principals, with the unlawful possession and transportation of intoxicating liquor, growing out of the same illegal act, is proper.

**2. Intoxicating Liquor § 2—**

The Turlington Act, sec. 2, ch. 1, Public Laws of 1923, is the law in North Carolina except to the extent that it is modified or repealed by the Alcoholic Beverage Control Acts, chs. 493, 418, Public Laws of 1935, and ch. 49, Public Laws of 1937.

**3. Same—Person may not possess or transport more than one gallon of intoxicating liquor unless it is being delivered to county store.**

Certain of the provisions of the Alcoholic Beverage Control Acts, especially the provisions relating to transportation, are to be given State-wide effect, and the control acts modify the Turlington Act in this respect only to the extent of permitting transportation in a sealed container of a quantity not in excess of one gallon of tax-paid liquor for personal use from out the State or from an Alcoholic Beverage Control Store, or transportation of whiskey to Alcoholic Beverage Control Stores, and hence it is still unlawful in this State for any person to possess or transport intoxicating liquor for any purpose other than those specified in the act or in a quantity in excess of one gallon, unless such liquor is in actual course of delivery to a County Store.

**4. Intoxicating Liquor § 9d—Proof of transportation of large quantities of intoxicating liquor raises prima facie case.**

Proof that defendant was transporting 203 cases of intoxicating liquor in this State is sufficient to take the case to the jury, the specific act of transportation being unlawful and no proof of a particular intent being necessary, since a person is presumed to intend the natural consequences of his act, but this *prima facie* case, without contradicting evidence, does not justify a directed verdict for the State, but is merely sufficient to take the case to the jury and subject defendant to the risk of an adverse verdict in the absence of evidence in rebuttal.

**5. Criminal Law § 2—**

Where a statute makes a specific act unlawful, proof of the commission of the act raises a *prima facie* case, since no proof of a particular intent

is necessary, the general necessary intent being presumed by virtue of the rule that a person is presumed to intend the natural consequences of his act.

**6. Criminal Law § 52c—**

The establishment of a *prima facie* case by the State does not warrant a directed verdict of guilty, but merely takes the case to the jury and subjects defendant to the risk of an adverse verdict in the absence of evidence in rebuttal.

**7. Criminal Law § 28a—**

*Prima facie* or presumptive evidence does not affect the burden of proof on the issue, which remains on the State, but shifts the burden of going forward with the evidence to defendant, or subjects him to the risk of nonpersuasion upon his failure to do so.

**8. Intoxicating Liquor § 9b—**

On a charge of illegal transportation of a large quantity of intoxicating liquor, the State is not required to prove that the transportation was not within the exceptions allowed by law, nor that the liquor was not being transported in interstate commerce, the exceptions being matters of defense.

**9. Criminal Law § 28a—**

The State has the burden of proving the *corpus delicti*, but when defendant relies upon some independent, distinct, substantive matter of exemption, immunity or defense, beyond the essentials of the legal definition of the offense itself, the onus of proof as to such matter is upon defendant.

**10. Intoxicating Liquor § 9c—**

Unsigned papers purporting to be bills of laden, without evidence of their genuineness, and which were issued to a transportation company with which neither defendant nor his codefendants were connected, are without probative force that the intoxicating liquor was being transported in interstate commerce.

**11. Intoxicating Liquor § 9g: Criminal Law § 54b—Mere inconsistency will not invalidate a verdict.**

Defendant was charged with unlawful possession of intoxicating liquor for the purpose of sale and with unlawfully transporting liquor for the purpose of sale. The jury's verdict was guilty of unlawful transportation of intoxicating liquors and not guilty as to possession. *Held:* Mere inconsistency will not invalidate the verdict, and further, on this record the inconsistency is explained by evidence tending to show that defendant was driving the truck transporting the liquor for his codefendant.

**12. Intoxicating Liquor §§ 7, 9f—**

Mere transportation of 203 cases of intoxicating liquor is *prima facie* unlawful even though not for the purpose of sale, and an instruction that defendant must have been transporting same for the purpose of sale in order to be guilty, is favorable to defendant.

APPEAL by defendant from *Phillips, J.,* at July Term, 1938, of GUILFORD. No error.

Criminal prosecution charging that the defendant did unlawfully possess intoxicating liquors for the purpose of sale and unlawfully transport liquors for the purpose of sale.

Officers of Guilford County, having information that liquor was being brought into said county on a designated truck, procured a search warrant and proceeded to attempt to locate the truck. They first sighted it in Randolph County. After watching the truck and following its movements until it got into Guilford County they stopped it and found the defendant driving the same, accompanied by one Shaffer. The truck bore a Kentucky license tag and a Maryland license tag was found on the inside of the truck, and the defendant later admitted that he had changed the tags. Upon search being made, the officers discovered 203 cases of liquor on the inside of the truck. The defendant first said that he had the key to the truck and then claimed that the key was in Baltimore. While the officers were following the truck it stopped and they saw men at the rear. They found fresh hand prints on the back of the truck around the lock. The spare wheel and some automobile tools were on the inside.

There was evidence that some of the whiskey was manufactured in Kentucky and that part of the liquor came from each of four wholesale liquor companies in Baltimore; that the automobile was owned by one Williard under a trade name. Various sheets of paper were found on person of defendant, on which were listed the names of certain people who live in High Point. There were also found certain other papers purporting to be bills of lading.

Separate warrants were issued against this defendant, his companion, Shaffer, and one Williard, alleged to be the owner of the liquor. The jury returned the following verdict: "That the defendant O. M. Davis is guilty of the unlawful transportation of intoxicating liquors and not guilty as to possession." From judgment pronounced thereon this defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*
*Walter Woodson and Walser & Wright for defendant, appellant.*

BARNHILL, J. The brief of the defendant is not in compliance with Rule 28 of this Court and its arrangement is such that it is with difficulty that we identify the exceptions and assignments of error to which reference is made. The brief does not bring forward exception No. 1, which was addressed to the action of the court in consolidating the three cases for trial. These three defendants were charged with participating in the same offense as principals. The State relied upon substantially

the same set of facts as against each. The consolidation was proper and simply tended to prevent a multiplicity of trials involving the same facts. *S. v. Combs,* 200 N. C., 671, 158 S. E., 252.

The defendant in his brief seeks to present primarily two questions for decision: (1) Does the transportation by a truck driver of 203 cases of liquor upon which the Federal tax has been paid constitute a *prima facie* case of unlawful transportation? And (2), is there a fatal variance between the charge and the verdict?

The warrant in the instant case does not specify the statute violated, but charges sufficiently a violation of the criminal laws of North Carolina. *S. v. Moschoures, ante,* 321; *S. v. Lockey, ante,* 525. Accordingly, it is well to examine the present law regulating the possession and transportation of intoxicating liquors ·in this State to determine whether defendant's acts were unlawful.

Under ch. 1, Public Laws 1923, section 2, known as the Turlington Act, it is unlawful to manufacture, sell, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquors, except in specified instances enumerated in the statute. This is still the law in North Carolina except to the extent that it may be modified or repealed by the Alcoholic Beverage Control Acts of 1935, ch. 493 and ch. 418, Public Laws 1935, and of 1937, ch. 49, Public Laws 1937. It is necessary then to examine the 1937 act to determine to what extent and under what conditions it is not unlawful to transport liquors in North Carolina.

By the express terms of the Alcoholic Beverage Control Statute, ch. 49, Public Laws 1937, it becomes fully effective only in those counties where an election has been held and a majority of the voters voting in the election have expressed themselves in favor of the operation of liquor stores, and in those counties in which liquor stores are operated under the provisions of chapters 418 and 493, Public Laws 1935. In certain respects, however, the act is State-wide in its operation and effect. In the introductory section, the act states that its purpose is to "establish a system of control of the sale of alcoholic beverages in North Carolina, and to provide the administrative features of the same in such a manner as to insure, as far as possible, the proper administration of the sale of certain alcoholic beverages under a uniform system throughout the State."

In section 10 thereof County Liquor Boards are vested with the authority to control the importation, sale, and distribution of liquors within their respective counties and to import, transport, receive, and sell liquors therein. Section 13 makes it unlawful for any person to possess any liquor upon which the taxes imposed by the United States or the State have not been paid. This section provides for the forfeiture

of the liquor and any vehicle used in the transportation thereof.    Posses-
sion without the tax stamp is made *prima facie* evidence of unlawful
possession.    In section 14, it is provided that it shall not be unlawful
for any person to transport a quantity of alcoholic beverages not in
excess of one gallon from a county in North Carolina coming under the
provisions of the act to or through a county in North Carolina not
coming under the provisions of the act, subject to certain provisions
therein specified.    Section 15 makes the possession for sale or sale of
illicit or county store liquor unlawful except when sold as provided by
the act by duly authorized liquor stores.    Under the provisions of
section 22, it is unlawful for any person to purchase in, or to bring into,
this State any alcoholic beverages from any source except from a County
Store operated under the act, except that a person may purchase legally
outside this State and bring into the same for his own personal use not
more than one gallon.    It is provided in the act that the transportation
from a County Store, or from without the State, of not more than one
gallon shall not be unlawful provided it is not transported for the pur-
pose of sale and the seal or cap of the container has not been broken or
opened.    It is likewise provided that liquor being transported in the
actual course of delivery to a County Store is not unlawful.    Section 25
expressly provides that the Turlington Act shall be in full force and
effect in the counties in which County Liquor Control Stores are not
established, and in section 27 all laws and clauses of laws in conflict with
the act are repealed only to the extent such acts may conflict therewith.

The expressed purpose looking to uniformity and the several provi-
sions of the act make it apparent that certain provisions of the 1937 act
are to be given State-wide effect.    This is particularly true as to the
transportation provisions with which the Turlington Act, ch. 1, Public
Laws 1923, conflicts only in respect to liquor being transported to
Alcoholic Beverage Control Stores, and whiskey purchased from a
County Store and being transported in a sealed container in an amount
not to exceed one gallon for personal use, and as to the transportation
of a like quantity brought into the State in sealed packages and upon
which the taxes have been paid.    Hence, it is still unlawful in this State
for any person to possess or transport intoxicating liquors for any pur-
pose other than those specified in the act or in a quantity in excess of
one gallon, unless such liquor is in actual course of delivery to a County
Store.    Therefore, ch. 1, Public Laws 1923, in so far as it deals with the
transportation within the State of intoxicating liquors is not inconsistent
with the 1937 act except in the indicated particulars and it is still in
force.    *S. v. Epps,* 213 N. C., 709; *S. v. Lockey, supra; S. v.
Langley,* 209 N. C., 178.    As the 203 cases of whiskey found in the
defendant's possession were being transported in North Carolina and

exceeded by far the one gallon limit permitted for personal use, evidence that the defendant was transporting the whiskey within the State was sufficient to take the case to the jury, as this act is the precise act expressly prohibited by the Turlington Act as well as by the Alcoholic Beverage Control Act. This does not imply that upon the undisputed proof of the act of transporting liquor in excess of one gallon within the State that the trial judge could direct a verdict of guilty. It means that this proof alone is sufficient to take the case to the jury and that thereupon the defendant may either offer evidence in rebuttal, or he may, relying upon the weakness of the State's evidence, accept the risk of nonpersuasion. As said by *Ashe, J.,* in *S. v. Phifer,* 90 N. C., 721: "There is a presumption of law that every man intends the natural consequences of his acts, but this presumption has no other or greater effect than to establish a *prima facie* case," or as more clearly stated by *Merrimon, J.,* in *S. v. Barbee,* 92 N. C., 820: "The law presumes that every man intends to produce the consequences that naturally result from his acts and conduct. This presumption, however, is not conclusive; it is evidence only so far as to prove a *prima facie* case in respect to the intent."

The *prima facie* character of the evidence in the instant case is not derived from any statute giving such effect to the evidence; it arises by virtue of the rule, as stated above, that where a specific act is made unlawful but no proof of a particular intent is required by the statute, in such case the general necessary intent may be presumed, to the end that mere proof of the commission of the prohibited act constitutes a *prima facie* case that the defendant is guilty of the offense charged. "When an act is forbidden by law to be done, the intent to do the act is the criminal intent and the law presumes the intent from the commission of the act; but when an act becomes criminal only by reason of the intent, unless the intent is proved the offense is not proved, and this intent must be found by the jury as a fact from the evidence." *S. v. McDonald,* 133 N. C., 680, and the cases there cited and discussed. However, it must be noted that the effect of the application of this rule does not shift the burden of proof from the State to the defendant; the burden of proof does not shift in liquor cases. *S. v. Redditt,* 189 N. C., 176. *Prima facie,* or presumptive evidence, does not affect the burden of proof of the issue; it relates only to what may be called the burden of going forward with evidence, or more accurately, the risk of nonpersuasion by failing to go forward with further evidence. *S. v. Helms,* 181 N. C., 566, citing with approval *S. v. Barrett,* 138 N. C., 630; *S. v. Wilkerson,* 164 N. C., 437. It follows, therefore, that the court's charge as to the *prima facie* effect of the evidence cannot be held for error.

It was argued that the State failed to negative either by allegation or proof the possibility that defendant's transportation herein came within one of the exceptions in the law, which exceptions have already been noted. It was further argued that it was the duty of the State to negative at least by proof the possibility that the truck load of whiskey was in process of movement in interstate commerce and, therefore, protected by Federal law. It is insisted, therefore, that the charge of the court to the effect that the contention that the liquor was being transported in interstate commerce was a matter of defense is erroneous. It is a sufficient answer to these contentions to point out that it has long been settled in this State that although the burden of establishing the *corpus delicti* is upon the State, when defendant relies upon some independent, distinct, substantive matter of exemption, immunity or defense, beyond the essentials of the legal definition of the offense itself, the *onus* of proof as to such matter is upon the defendant. *S. v. Arnold,* 35 N. C., 184; *S. v. McNair,* 93 N. C., 628; *S. v. Buchanan,* 130 N. C., 660; *S. v. Smith,* 157 N. C., 578. In discussing this phase of the law in *S. v. Connor,* 142 N. C., 700, *Hoke, J.,* says: "It is well established that when a statute creates a substantive criminal offense, the description of the same being complete and definite, and by a subsequent clause, either in the same or some other section, or by another statute, a certain case or class of cases is withdrawn or excepted from its provisions, these excepted cases need not be negatived in the indictment, nor is proof required to be made in the first instance on the part of the prosecution. . . . In such circumstances, a defendant charged with the crime who seeks protection by reason of the exception, has the burden of proving that he comes within the same. *S. v. Heaton,* 81 N. C., 543; *S. v. Goulden,* 134 N. C., 743." To the same effect are *S. v. Norman,* 13 N. C., 222; *S. v. Burton,* 138 N. C., 576; and *S. v. Johnson,* 188 N. C., 591; *S. v. Dowell,* 195 N. C., 523; *S. v. Hege,* 194 N. C., 526; *S. v. Foster,* 185 N. C., 674.

In this connection it may be well to note that the paper writing offered in evidence by the defendants purporting to be bills of lading have no probative force. The papers are unsigned and there was no evidence of their genuineness. Furthermore, the evidence discloses that they purported to be issued to a transportation company with which neither this defendant nor his codefendants had any connection. The only evidence that the liquor was being transported in interstate commerce was the evidence that the defendant said that he was transporting it from Baltimore to Kentucky. This was a self-serving declaration, which, no doubt, would have been excluded had the solicitor objected thereto.

The challenge of the verdict on the ground that it is inconsistent cannot be sustained. The apparent inconsistency may well be explained by

an examination of the record as a whole. The court charged the jury on the count as to possession, only as to possession for the purpose of sale, and the evidence indicates that this defendant was transporting for another. Seemingly, the jury was unwilling to convict the defendant of possession for the purpose of sale under these circumstances. In any event, a jury is not required to be consistent and mere inconsistency will not invalidate the verdict. *S. v. Sigmon,* 190 N. C., 684, in which it was said: "The offenses are designated in the statute separately and while the jury would have been fully justified in finding the defendant guilty on both counts under the evidence in this case, their failure to do so does not as a matter of law vitiate the verdict on the count of transporting. It goes without saying that the jury would have to find from the circumstantial evidence that defendant had in his possession liquors that he was transporting before they could convict him." See also, *S. v. Potter,* 185 N. C., 742; *S. v. Snipes,* 185 N. C., 743; *S. v. Davis,* 203 N. C., 47, as to cases involving the reconciliation of verdicts with the indictments.

The charge of the court on the count of transporting was favorable to the defendant in that it required the jury to find, before convicting, that transportation was for the purpose of sale, whereas the transportation of the quantity indicated was unlawful even though not for sale. *S. v. Sigmon, supra; S. v. Winston,* 194 N. C., 243. Nor does the defendant have just cause to complain because the jury charitably returned a verdict of not guilty upon the possession charge in the face of overwhelming evidence.

A careful consideration of the assignments of error leads us to the conclusion that in the trial below there was

No error.